**FLORA NICHOLAS and PAUL GAYTER, in their own right and AS NEXT FRIEND OF S.G., Plaintiffs**

**v.**

**WYNDHAM INTERNATIONAL INC., WYNDHAM MANAGEMENT CORPORATION, SUGAR BAY CLUB & RESORT CORPORATION, RIK BLYTH and BRYAN HORNBY, Defendants**

**NICHOLAS v. WYNDHAM INTERNATIONAL INC.**

Civ. No. 2001-147

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 25, 2005

*For plaintiffs*: DARYL C. BARNES, ESQ., St. Croix, U.S.V.I., JOSEPH PETROSINELLI, ESQ., Washington, D.C.

*For defendants Wyndham International Inc., Wyndham Management Corp., Sugar Bay Club & Resort Corp., and Rik Blyth*: DOUGLAS C. BEACH, ESQ., St. Thomas, U.S.V.I.

*For defendant Bryan Hornby*: JOHN A. ZEBEDEE, ESQ., St. Thomas, U.S.V.I.

GOMEZ, *District Judge*

## MEMORANDUM

### (April 25, 2005)

Before the Court is a motion jointly filed by defendants Wyndham International, Inc. ["Wyndham International"], Wyndham Management Corporation. ["WMC"], Sugar Bay Club and Resort Corporation ["Sugar Bay"], and Rik Blyth [collectively "Wyndham Defendants"]. The Wyndham Defendants move the Court to exclude the expert opinion testimony of the plaintiffs' proffered experts William Watson and Kenneth Lanning. For the reasons set forth below, the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual record in this matter is voluminous. For the purpose of the motion presently before the Court, I will only review the basic facts of this matter. The plaintiffs in this action vacationed at the Wyndham Sugar Bay resort hotel on St. Thomas from April 9, 2000, to April 15, 2000. The adult plaintiffs allege that during their visit defendant Bryan Hornby sexually molested their minor daughter, S.G.

Hornby was employed by WMC and worked at the hotel as the coordinator of the hotel's "Kids Klub," a child-care program for children staying at the hotel. Consequently, the plaintiffs have alleged, among other claims, that the Wyndham Defendants were negligent in hiring, retaining, and supervising Hornby. In support of their claims, the plaintiffs seek to rely on the testimony of certain expert witnesses at trial. The Wyndham Defendants have challenged the proposed testimony of two of those witnesses, namely, Kenneth Lanning and William Watson.

On February 28, 2005, and March 1, 2005, this Court held a hearing on the Wyndham Defendants' motion to exclude the testimony of William Watson and Kenneth Lanning. Lanning and Watson were not present at the hearing. Instead, the plaintiffs relied on their deposition testimony to argue that they are qualified to testify as expert witnesses in

this matter. Following the hearing, each side submitted proposed findings of facts and conclusions of law.[1]

## II. ANALYSIS

### A. Legal Standards Governing Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the testimony of expert witnesses. That rules states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court explained the trial judge's "gatekeeper function" in assessing the reliability and relevance of expert testimony and identified factors a trial judge should consider when faced with a pre-trial evaluation of expert testimony.[2] 509 U.S. 579, 593-94, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). The Daubert Court explained the trial judges' inquiry as follows:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the

---

[1] The Wyndham Defendants have filed a motion to strike the plaintiffs proposed findings of facts and conclusions of law because the plaintiffs included in their findings a new declaration by Kenneth Lanning that was not in evidence at the hearing. Although this declaration, which is dated March 7, 2005, was indeed not before the Court at the Daubert hearing, I find it to be an inconsequential submission. It does nothing more than summarize information already in the record and, importantly, does not add new information that would change the Court's decision.

[2] Specifically, the Court identified the following factors:
1. whether a theory or technique can be (and has been) tested;
2. whether the theory or technique has been subjected to peer review and publication;
3. in the case of a particular scientific technique, consideration of the known or potential rate of error, and
4. whether the practice is generally accepted in the relevant ' community.

509 U.S. at 593-94.

evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely <u>on principles and methodology</u>, not on the conclusions that they generate.

*Id.* at 594-95 (emphasis added). In *Kumho Tire Company v. Carmichael,* the Supreme Court held that the trial judge's gatekeeper function included review of not only testimony based on "scientific" knowledge, but also testimony based on "technical" and "other specialized" knowledge. 526 U.S. 137, 141, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). The *Kumho Tire* Court also stated that the trial judge's objective is "to ensure the reliability and relevancy of expert testimony." *Id.* at 152.

The Court of Appeals for the Third Circuit, interpreting Rule 702, *Daubert,* and *Kumho Tire,* has held that proposed expert witnesses must meet three requirements: "qualification, reliability, and fit." *Schneider v. Fried,* 320 F.3d 396, 405 (3d Cir. 2003); *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000). Regarding an expert's qualification, the Third Circuit has said that the witness must possess "specialized expertise." *Schneider,* 320 F.3d at 405. A broad range of knowledge, skills, and training can qualify an individual as an expert witness. *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*").

To satisfy the reliability requirement, the Third Circuit has held that "the expert's opinion must be based on the '<u>methods and procedures of science</u>' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli II,* 35 F.3d at 742 (quoting *Daubert,* 509 U.S. at 590) (emphasis added). As to the "fit" requirement, the Third Circuit has stated that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider,* 320 F.3d at 405; *United States v. Mathis,* 264 F.3d 321, 335 (3d Cir. 2000) (stating that the "fit" requirement means the "scientific technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.").

### B. Kenneth Lanning

The plaintiffs offer Kenneth Lanning as an expert qualified to opine on the inadequacies of the Wyndham Defendants' hiring, training, and supervision policies. (Plaintiffs Opp'n at 6; hereinafter "Opp'n at

__.") In support, the plaintiffs point to Lanning's work at the Federal Bureau of Investigation ["FBI"], where he developed profiling techniques to identify child molesters, consulted on investigations involving child victimization, and published a typology of child molesters. (*Id.*, Ex. 1 at 47-52; Ex. 2.) According to his resume, Lanning has also authored dozens of articles on the behavior of child molesters and other topics related to child sexual exploitation. (*Id.*, Ex. 2.)

Importantly, Lanning's expert report has very little to do with his training or experience profiling child molesters. Lanning's report broadly states that the Wyndham Defendants did not adequately screen Hornby's application, did not properly train their employees to recognize traits of child molesters, and failed to adequately supervise Hornby. (Defs.' Mot., Ex. D at 5, 8, 11.) For example, Lanning states in his report that "Hornby's supervisors and co-workers at Wyndham Sugar Bay seem to have no idea what warning signs, inappropriate behavior, or indicators of sexual victimization of children risks.they should be able to recognize, address, and report." (*Id.*, Ex. D at 8.) Lanning also opines in his report that the Wyndham Defendants "did not properly train supervisors and staff to understand and recognize the risks of sexual victimization of children in the Kids Klub by staff members." (*Id.*)

Missing from Lanning's report is any reference to methods or procedures upon which his expert opinion is based. Lanning does refer at length to the factual record in this matter, including depositions of Hornby's supervisors. However, Lanning's proferred testimony is fundamentally unsound as it suffers from an elemental disconnect between his experience as an FBI agent specializing in the field of child molester profiling and his opinions on the procedures hotels should employ in screening job applicants and supervising employees. While Lanning may have experience in profiling child molesters, there is no evidence in the record that he has expertise on how the hotel industry hires job applicants and supervises employees. Indeed, to conclude otherwise would require a tremendous leap of faith, which the law does not permit.

Lanning's methodology similarly is suspect as the plaintiffs offer nothing other than his *ipse dixit* opinions. In their proposed findings of fact and conclusions of law, the plaintiffs describe Lanning's methodology as his application of the factual record in this matter to his "extensive knowledge, expertise and experience regarding the sexual

victimization of children." (Plts. Mem. at 24.) This is insufficient, as the Third Circuit has clearly instructed that an "expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Paoli II*, 35 F.3d at 742.

The plaintiffs have also failed to meet the "fit" requirement. The specialized knowledge that Lanning gained at the FBI while working on child victimization cases will not assist the trier of fact in determining the proper standards for screening and supervising employees in the hotel industry. *See Mathis*, 264 F.3d at 335. Having considered the parties' written submissions and oral arguments, the Court concludes that the plaintiffs have failed to establish that Lanning is qualified to testify as an expert witness on the subjects of the Wyndham Defendants' hiring, training, and supervision policies. Accordingly, the Court will grant the Wyndham Defendants' motion to exclude Lanning's testimony.

### C. William Watson

The plaintiffs offer William Watson as "an expert in the area of security, specifically in the area of security as it relates to childcare facilities." (Opp'n. at 15.) Additionally, at the hearing on this motion, the plaintiffs proposed a much broader purpose for Watson's testimony, stating that Watson offers opinions on the Wyndham Defendants' "negligent hiring and retention [which] contribut[ed] to inadequate security and safety at the Wyndham, and the lack of policies and/or procedures specific to sexual assault of children at the Wyndham, and then negligent supervision specific to the incident." (Feb 28, 2005, Hearing Tr. at 206.)

In support of Watson's qualification to testify on this wide range of issues, the plaintiffs highlight that Watson has worked in the security business since 1981, including stints as a hotel security guard, a police officer with the United States Treasury Department, positions at two colleges overseeing security, and as the head of his own security business. (*Id.* at 15-16; Wyndham Defs. Motion, Ex. A at 313-315, 320-22, 330-37.) There is no evidence that Watson's duties at any of these various security-related jobs were focused primarily or even substantially on childcare facilities.[3] In fact, the best evidence that Watson has any

---

[3] Indeed, the plaintiffs admit in their opposition to the Wyndham Defendant's motion that Watson's experience does not include extensive involvement with children: "Although Watson has not focused his career on childcare ... he has secured children as

security experience specifically related to children is that he once authored a standard operating procedure for a university hospital neonatal unit. (Wyndham Defs. Mot., Ex. A at 340-343.)

The evidence of Watson's expertise on the hiring and supervision of hotel employees or the operation of hotel childcare facilities is also woefully inadequate. Undeterred by his relative lack of experience with childcare facilities or with hiring and supervising hotel employees, Watson broadly concludes in his report that the Wyndham Defendants were "negligent in [their] pre-employment screening and subsequent hiring of perpetrator Brian [sic] Hornby."[4] (Wyndham Defs. Mot., Ex. B at 3.) Although Watson's report repeatedly refers to the facts surrounding this matter, there is no evidence in the record as to what methods or procedures he employed in arriving at his opinion that the Wyndham Defendants negligently hired and supervised Hornby.

In sum, while Watson's experience as a security guard and in various other security-related positions may allow him to speak about the hotel's security measures in general, it does not constitute the requisite "specialized expertise" to opine on employee hiring and supervision practices in the hotel industry. *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003).

Even if he were qualified, the reliability of Watson's testimony is also lacking. As with Lanning, the Court has no evidence that Watson's methods and procedures are based on reliable methods and not *ipse dixit* conclusions, "subjective belief[,] or unsupported speculation." *Paoli II*, 35 F.3d at 742. Finally, the plaintiffs have also failed to satisfy the "fit" requirement. The knowledge that Watson has accumulated regarding security issues simply will not assist the trier of fact in determining the proper standards for hiring and supervising employees in the hotel industry. *See Mathis*, 264 F.3d at 335.

---

well as less vulnerable individuals, and he can speak to the unique considerations in securing people with different vulnerabilities." (Opp'n. at 16 n.9.)

[4] Watson further broadly concludes that the Wyndham Defendant's actions

created a foreseeable window of opportunity for Hornby to victimize the children while in the care of the Wyndham Sugar Bay Kid's Klub. This failure, was exacerbated by the lack of any policies, procedures or competent administrative oversight, designed to identify, deter, detect and report questionable behavior with regard to the sexual assault of child patrons of the Wyndham Sugar Bay Kid's Klub.

(Wyndham Defs. Mot., Ex. B at 3.)

Having considered the parties' written submission and oral arguments, the Court concludes that Watson is not qualified to testify as an expert witness as set forth in his report. His testimony is not admissible because the plaintiffs have not shown that he satisfies the qualification, reliability, and fit requirements. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). Accordingly, the Court will grant the Wyndham Defendants' motion to exclude Watson's proposed expert testimony.

## III. CONCLUSION

The Wyndham Defendants have challenged the proposed expert opinion testimony of Kenneth Lanning and William Watson. Having considered the parties' arguments, both written and oral, the Court concludes that neither Lanning nor Watson's testimony is permissible under Rule 702 of the Federal Rules of Evidence. An appropriate order follows.